IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KEVIN S. C.,

                        Plaintiff,

            v.                                      Civil Action No.
                                                    5:21-CV-1318 (NAM/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINKSY LAW GROUP                     CHRISTOPHER MILLIMAN, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                HUGH DUN RAPPAPORT, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that he was not disabled at the

relevant times and, accordingly, is ineligible for the supplemental security

income ("SSI") benefits for which he has applied.  The matter has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

For the reasons set forth below, I recommend a finding that the

Commissioner's determination resulted from the application of proper legal

principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in September of 1969, and is currently fifty-three

years of age.  He was forty-nine years old on March 13, 2019, the date

upon which he filed his application for benefits.[1]  Plaintiff measures five feet

and six inches in height, and weighed approximately one hundred and forty

pounds during the relevant period.  Plaintiff is single and lives in his

parents' home in the Syracuse, New York area.

Plaintiff reports that he graduated high school and attended a few

years of college, but did not obtain a degree.  He most recently worked in

---

[1]    Plaintiff later amended his alleged onset date to September 28, 2019, making
him fifty years old at the beginning of the period for which he alleges disability.

2008 in the meat department at a Walmart, but was fired due to an altercation with a co-worker who he was dating.

Plaintiff alleges that he suffers from type 2 diabetes, a seizure disorder, impulse control difficulties, and mild depression.  As is relevant to his application, plaintiff has treated for his impairments with Druger Eye Care, Upstate University Hospital Health System and the Joslin Diabetes Center, and sources at Gastroenterology and Hepatology of Central New York and Westside Podiatry.  His primary care physician is Dr. Luis Castro.

Plaintiff alleges that he experiences complications from his diabetes, including seizures when his blood glucose is too low, mental or perceptual disturbances if his blood glucose is too high, neuropathy in his feet impacting his ability to walk, and difficulties with vision, balance and sleep. He reports that he uses supplemental insulin, but his glucose levels are somewhat difficult to control due to not "eat[ing] properly as I should." Plaintiff states that he is unable to drive because of seizures, needs to shift positions every thirty minutes, and is limited to lifting or carrying ten-to-fifteen pounds because of back pain and neuropathy.  He can perform household chores and yard work if he is able to take breaks. Plaintiff also reports experiencing impulse control problems, particularly when dealing with people.  He last experienced a witnessed seizure in September of

2019 and notes that his seizures appear to be primarily related to his blood glucose levels.  Plaintiff testified that he has attempted to find work since 2008 but has not been hired anywhere, and that he also attempted college, but had to stop after losing financial aid for not attending classes and getting poor grades.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social Security Act on March 13, 2019.  Administrative law judge ("ALJ") Elizabeth W. Koennecke held an initial telephone hearing on December 7, 2020, and a follow-up hearing to take vocational expert testimony on March 22, 2021. After those hearings, ALJ Koennecke issued a decision on March 30, 2021, finding that plaintiff was not disabled.  That opinion became a final determination of the agency on October 4, 2021, when the Appeals Council denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Koennecke applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff did not engage in substantial gainful activity during the relevant period.  The ALJ next found at step two that plaintiff suffers from severe

4

impairments that impose more than minimal limitations on his ability to perform basic work functions, including diabetes mellitus, peripheral neuropathy, and a seizure disorder.  As part of her step two finding, ALJ Koennecke also found that plaintiff's alleged high cholesterol, various digestive disorders, hammertoes and nail dystrophy, vision problems, and mental disorders are not severe impairments, and that his alleged premature birth, speech delays, stutter, back pain, neuropathy in his hands, residuals of hypothermia, and head or other injuries related to his seizures are all not considered to be medically determinable impairments.

At step three, ALJ Koennecke examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 1.00, 9.00, 11.00, 11.02, 11.18, and 14.00, as well as Social Security Rulings ("SSRs") 14-2p and 14-3p, related to endocrine disorders.

ALJ Koennecke next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of work at the medium exertional level, as defined by the controlling regulations, with the following exceptions:

> [he] should never climb ladders, ropes, or scaffolds;
> can never balance; can occasionally climb ramps or
> stairs; has unlimited ability to stoop, kneel, crouch, or
> crawl; should avoid exposure to heights, hazards,
> moving mechanical parts, and dangerous machinery;
> and should not drive.

ALJ Koennecke went on to step four and concluded that plaintiff is able to perform his past relevant work as a meat clerk, described in Dictionary of Occupational Titles ("DOT") 222.684-010, both as he actually performed that job and as it is generally performed in the national economy.  In making this finding, the ALJ elicited and relied on testimony from a vocational expert.  The ALJ further proceeded to step five and made an alternative finding that, relying on the vocational expert's testimony, plaintiff remains able to perform available work in the national economy, citing the representative positions of store laborer, laundry worker, and auto detailer.  Based upon these findings, ALJ Koennecke determined that plaintiff was not disabled at the relevant times.

C.   This Action

Plaintiff commenced this action on December 8, 2021.[2]  In support of

---

[2]     This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

his challenge to the ALJ's determination, plaintiff argues that the ALJ failed to properly evaluate the opinion evidence in the record by discussing multiple different opinions in a single analysis, and by failing to properly assess the opinion from Dr. Marisa Desimone and nurse practitioner ("NP") Lauren Eadline.  Dkt. No. 12.

Oral argument was conducted in this matter, by telephone, on December 8, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

7

If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

8

B.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaged in substantial gainful activity ("SGA"); if so, then

the claimant is not disabled, and the inquiry need proceed no further.  *Id.*

§§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level

constituting SGA, then the second step involves an examination of whether

the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Analysis</u>

    Plaintiff primarily argues that the ALJ erred in failing to properly evaluate the joint opinion from treating sources Dr. Marisa Desimone and NP Lauren Eadline which, he asserts, is consistent with the medical evidence in the record.  Dkt. No. 12, at 14.  Specifically, plaintiff highlights the fact that the ALJ grouped that opinion in the same analysis with the two given by primary care physician Dr. Luis Castro, despite the fact that those opinions expressed different limitations.  Dkt. No. 12, at 15-16.  In support of that contention, plaintiff theorizes that the opinion of Dr. Desimone and NP Eadline focused upon limitations caused by plaintiff's diabetes, whereas Dr. Castro's cited limitations that resulted from plaintiff's seizure disorder.

    Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering

whether the opinions are supported by and consistent with the record in the
case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL
168819, at *5853 (stating that, in enacting the new regulations, the agency
was explicitly "not retaining the treating source rule").  An ALJ must
articulate in his or her determination as to how persuasive he or she finds
all of the medical opinions and explain how he or she considered the
supportability[3] and consistency[4] of those opinions.  20 C.F.R. §
416.920c(b).  The ALJ also may – but is not required to – explain how he or
she considered the other relevant enumerated factors related to the
source's relationship with the claimant, including the length of any
treatment relationship, the frequency of examinations by the source and the
purpose and extent of the treatment relationship, whether the source had
an examining relationship with the claimant, whether the source specializes

---

[3]    On the matter of supportability, the regulations state that "[t]he more relevant the
objective medical evidence and supporting explanations presented by a medical source
are to support his or her medical opinion(s) or prior administrative medical finding(s), the
more persuasive the medical opinion or prior administrative medical findings(s) will be."
20 C.F.R. § 416.920c(c)(1).

[4]    On the matter of consistency, the regulations state that "[t]he more consistent a
medical opinion(s) or prior administrative medical finding(s) is with the evidence from
other medical sources and nonmedical sources in the claim, the more persuasive the
medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §
416.920c(c)(2).

in an area of care, and any other factors that are relevant to the

persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

NP Eadline and Dr. Desimone submitted a joint opinion on May 15,

2019, based on plaintiff's diagnosis of type 2 diabetes, which they

assessed as being "moderately controlled" with a good prognosis.

Administrative Transcript ("AT") at 732.[5]  They indicated that plaintiff

experiences hypo- or hyperglycemia attacks, has "some knowledge deficits

regarding insulin/sliding scale" to control his blood glucose levels, and also

experiences moderate pain and paresthesia in his toes due to diabetic

neuropathy.  AT 732-33.  They opined that plaintiff has "no limitations" in

his abilities to sit, stand, or walk and that he does not need to shift positions

at will, although they were unable to assess his ability to lift, carry, or

perform postural or manipulative limitations.  AT 733-34.  They further

opined that plaintiff would need unscheduled breaks to sit quietly lasting

fifteen minutes "every couple hours or when feeling hypoglycemic," that he

would be off-task ten percent of the workday, and that he would likely be

absent two days per month.  AT 735.

---

[5]    The administrative transcript is found at Dkt. No. 9, and will be referred to
throughout this decision as "AT __."

Plaintiff's argument that it was error for the ALJ to discuss the reasons for finding the relevant opinions of Dr. Desimone/NP Eadline and Dr. Castro to be of little persuasive value in a single paragraph analysis lacks merit.  Plaintiff relies heavily on the fact that these opinions expressed different degrees of limitation.  However, the ALJ's discussion of these sources' opinions makes clear that she found that none of those opinions were not supported by or consistent with the evidence in the record related to plaintiff's seizure disorder and diabetes.  Whether those sources opined the same or different limitations is immaterial, because the ALJ found that they were as a whole unpersuasive, primarily because the levels of limitation opined in those opinions were not consistent with or supported by the relevant evidence.  Moreover, it is not difficult to parse which portions of the ALJ's rationale apply only to one of the opinions and which apply to both.  The ALJ acknowledges that Dr. Castro opined some limitations that Dr. Desimone/NP Eadline did not and vice versa, and discusses the rationale for various categories or groups of limitations individually.  AT 28-30.  Indeed, much of the ALJ's analysis of plaintiff's functioning applies solely to Dr. Castro's opinion, as the other sources' joint opinion did not indicate any exertional, postural or manipulative limitations, and there is therefore no confusion as to what those portions of the ALJ's

rationale support.  The only area of overlap is related to the limitations for unscheduled breaks, off-task time, and absences, to which the ALJ devotes a portion of the paragraph related to the opinions, wherein she discusses both plaintiff's diabetes and seizures, and an entire separate paragraph constituting her reasons for finding no such limitations are warranted. Because the ALJ's rationale explains why she found those opinions to be unpersuasive, including specifically regarding the areas where both opinions indicated significant disabling limitations, the ALJ's choice to discuss those opinions in a somewhat conjoined fashion, though perhaps not the best practice, did not constitute or result in any error.  As will be discussed in more detail below, the ALJ found that none of those three opinions represented an accurate picture of plaintiff's functioning when considering *all* of plaintiff's relevant impairments, and she provided multiple specific reasons related to the limitations for absences, breaks, or off-task time that apply to both of the opinions.

I note in particular that the applicable regulations require only that the ALJ document an assessment of how persuasive each opinion is and provide an analysis of the factors of consistency and supportability as to the opinions.  20 C.F.R. §§ 404.1520c, 416.920c.  Nothing in the regulations requires that this analysis be entirely separate for each opinion,

as plaintiff now contends. The ALJ clearly indicated that she found these opinions to be of little persuasive value and provided reasons why they were not supported by the respective provider's own treatment notes or explanation and inconsistent with the evidence in the record as a whole. The ALJ therefore met her duty of articulation, and I find no legal error in the way she structured her analysis.

Plaintiff further argues that a combined analysis was not appropriate because Dr. Castro's opinion addresses only limitations related to seizures, while the opinion from Dr. Desimone and NP Eadline address limitations related to diabetes. However, plaintiff's argument is contradicted by the simple fact that at least Dr. Castro's 2019 opinion *does* appear to take into consideration his diabetes. Dr. Castro listed both "DMII," which presumably means "diabetes mellitus II," and "seizures" as plaintiff's diagnoses, and indicated that plaintiff's prognosis was good with no current symptoms. AT 737. Notwithstanding that fact, even if Dr. Castro based his later 2020 opinion solely on plaintiff's seizure disorder,[6] that would not render the

---

[6]    Dr. Castro's 2020 opinion does not differ from his 2019 opinion in many material respects that would be relevant to the current analysis. Further, for the reasons discussed by the ALJ, the exertional, postural and manipulative limitations in that opinion are not generally consistent with evidence in the record, including Dr. Castro's own treatment records. Plaintiff has notably not asserted any argument that the ALJ failed to provide sufficient or proper analysis related to her finding that Dr. Castro's opinions were of little persuasive value, other than to argue that the ALJ should have provided separate analyses for his opinions and that of Dr. Desimone/NP Eadline.

ALJ's assessment of the opinions in a single analysis improper or harmful.

It is undisputed in the record that plaintiff's seizure disorder appears almost

entirely triggered by hypoglycemia, and is therefore directly tied to his

diabetes.  AT 966, 1099.  Indeed, the record corroborates that plaintiff

ceased having seizures after his diabetes was brought under better control

by medication and diet in late-2019 and beyond.  *See* AT 975, 983, 991,

1051, 1097-99.  Given both that plaintiff's seizures were controlled when

his diabetes was under good control and that he has not experienced a

seizure since September of 2019, the fact that Dr. Castro might have relied

solely on seizures for his 2020 opinion only bolsters the ALJ's conclusion

that his opined limitations were unsupported by the record and does not

suggest that a separate analysis of the joint opinion from Dr. Desimone and

NP Eadline was required merely because that opinion was instead based

on plaintiff's diabetes.

After arguing legal error based on the form of the ALJ's analysis,

plaintiff next asserts that the substantive reasons provided by the ALJ for

rejecting the joint opinion from Dr. Desimone and NP Eadline related to the

limitations for unscheduled breaks, absences, and off-task time are

insufficient and flawed.   Plaintiff argues in particular that the ALJ's

statement that his diabetes was fairly well-controlled to support her

17

rejection of those limitations is both a mischaracterization of the record and insufficient to build a logical bridge from that evidence to her conclusion. Neither of these arguments is supported.

The ALJ specifically found that the opinion that plaintiff would be absent from work[7] due to either his diabetes or seizures is inconsistent with the fact that "medical evidence shows that the claimant's blood sugar levels are controllable and the variations in blood sugar levels with hypoglycemia were attributed to his diet and not uncontrolled condition." AT 28. Although plaintiff terms this a mischaracterization of the record, I do not agree. The record does document less control over his levels in early and mid-2019, but those treatment notes indicate that hypoglycemia was occurring because he was not using his insulin dose scale correctly, was not balancing his meals appropriately, did not eat on a consistent or regular schedule, did not make changes to his diet, took his normal dose of insulin even when he did not eat a meal, used the incorrect amount of insulin, and

---

[7]    The decision also more broadly indicates that the ALJ found limitations related to unscheduled breaks, excessive absences and off-task behavior were simply not supported by the record. AT 31. The evidence discussed herein regarding the fact that plaintiff experienced no seizures and few discernable symptoms when his diabetes was properly treated therefore also supports the ALJ's findings regarding the opined limitations for breaks and off-task time. The ALJ also specifically noted that off-task allegations were not supported by examinations revealing no difficulties with alertness or attention and the evidence that he was able to attend appointments and perform regular daily activities. AT 31.

continued to eat a high carbohydrate diet.  AT 527, 794, 797, 802, 807.  He had a seizure related to hypoglycemia in September of 2019 because he forgot to bring his candy with him when he was out of the house with his mother and suffered an episode of hypoglycemia.  AT 964.  In another record from September of 2019, it was noted that his recent seizure and recent episodes of hypoglycemia appeared to be related to insulin timing, meal timing, and not using the correct columns of his insulin sliding scale; it was also noted that he had a large amount of carbohydrate variability in his diet, with very high carbohydrate meals consumed at night.  AT 968.  In November of 2019, plaintiff's provider noted that the addition of Lantus was controlling his hypoglycemia during the day, and also documented that plaintiff had decreased his carbohydrate intake and no longer needed to use short-acting insulin.  AT 975.

In January and February of 2020, it was noted that plaintiff had no recent seizures, and his diabetes was well-controlled.  AT 983, 991.  There are no documented complaints regarding his diabetes control until September of 2020, when he reported higher glucose levels, although he admitted that he had been eating more candy recently.  AT 1045.  His provider updated his insulin scale to account for his diet changes and advised him to eat less candy and increase his physical activity.  AT 1051.

No further significant destabilizations in glucose levels were noted throughout 2020, and it was noted in November of 2020 and February of 2021 that plaintiff's seizure condition had been stable with no further seizures.  AT 1078, 1097-99.  Therefore, consistent with the ALJ's finding, the record shows that plaintiff experienced issues with blood glucose extremes typically only when he was either not adhering appropriately to his insulin regimen and/or not eating a low-carbohydrate diet with consistent meals.

Not only was the ALJ's reliance on plaintiff's generally well-controlled (or at least controllable) diabetes not a mischaracterization of the record, it also has a clear logical connection to the ALJ's ultimate conclusion.  The record shows that, when plaintiff's diabetes is controlled, he does not experience seizures,[8] and other related symptoms, such as foot neuropathy and mild retinopathy, did not worsen or appear to impact his functioning in any meaningful way.  Indeed, although the ALJ found neuropathy to be a severe impairment, thus acknowledging that it might

---

[8]    The ALJ specifically cited the fact that plaintiff did not experience any seizures after September of 2019 as a reason for finding the relevant break, off-task, and absence limitations to be without support.  It was not error for the ALJ to consider this reason when assessing the joint opinion, which was ostensibly based on plaintiff's diabetes, because the record makes clear that his seizures were a symptom of hypoglycemia.  Thus, the absence of seizures when his diabetes is controlled is a relevant factor to consider when assessing whether the joint opinion is an accurate assessment of plaintiff's overall functioning.

cause some limitations, treatment notes throughout 2019 and 2020 indicated intact monofilament sensation in the sole of plaintiff's feet, and loss of sensation to vibration only in his toes. AT 972, 980, 990, 1049, 1065, 1072-73, 1091-92. There is no indication that plaintiff's gait or ability to walk were impaired by his neuropathy in a way that would suggest a need to be off-task, absent, or to take unscheduled breaks, although physical therapy records did indicate some decrease in his ability to balance, which the ALJ notably accounted for by including a limitation for never balancing in the RFC. AT 1041, 1058, 1061-62. I note also that the joint opinion indicated that plaintiff's need for unscheduled breaks would depend largely on whether he became hypoglycemic during the workday, but plaintiff was not experiencing hypoglycemia throughout late-2019 and into 2021 when adhering to his treatment as the ALJ discussed. I therefore find no error in the ALJ's reliance on the evidence that shows plaintiff's diabetes was well-controlled with treatment adherence, which also resulted in a cessation of seizure activity, when finding that the opinions regarding absences, off-task time, and unscheduled breaks were inconsistent with the record evidence.

To the extent plaintiff argues that, when assessing the factor of consistency, the ALJ failed to consider the fact that the joint opinion is

generally consistent with Dr. Castro's opinions in that they both opine disabling limitations in the need for unscheduled breaks, absences, and off-task time, I find this argument to be unpersuasive. It is immaterial whether the opinions are consistent with one another, because the ALJ provided extensive reasons as to why she found both of those opinions to be of little persuasive value, including that they were both inconsistent with the other evidence in the record as a whole.

Lastly, I acknowledge that, standing alone, an ALJ's reliance on the check-box nature of opinion forms has been found to constitute an inadequate reason for rejecting an opinion. *See Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022). However, the ALJ did not rely solely on the form of the opinions, but instead also considered the fact that they do not contain any extensive or useful explanation to provide an indication of what the basis was for including the relevant limitations. AT 29. Whether the source of an opinion has provided an explanation for the opined limitations is specifically listed as one of the factors that an ALJ can appropriately consider when assessing supportability under the Commissioner's amended regulations. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). None of the relevant opinions from Dr. Desimone/NP Eadline or Dr. Castro contain a narrative regarding how those sources believe plaintiff's diabetes

22

and seizure disorder would cause him to be off-task or to require absences, and the notation of Dr. Desimone/NP Eadline that plaintiff would need breaks every few hours or should he become hypoglycemic must be counter-balanced by the evidence that plaintiff was demonstrably able to prevent hypoglycemic episodes with proper diet and insulin usage. Further, the treatment records from the Joslin Diabetes Center in particular do not include any evidence that would corroborate a need for breaks, absences, or off-task time during the relevant period, nor do they provide an explanation for why Dr. Desimone/NP Eadline in particular thought those limitations were necessary.

For all of the above reasons, I find that the ALJ properly assessed the opinion from Dr. Desimone/NP Eadline under the applicable regulations, and her finding that that opinion was of little persuasive value is supported by substantial evidence.

IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 13) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    December 13, 2022    _____
        Syracuse, NY          DAVID E. PEEBLES
                              U.S. Magistrate Judge